# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ALBUQUERQUE CAB COMPANY, INC.,

    Plaintiff,

v.                                                        Civ. No. 17-1006 SCY/KBM

LYFT, INC., UBER TECHNOLOGIES,
INC., and HINTER-NM, LLC,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTIONS TO DISMISS

The central question presented in this case is whether two transportation network companies were subject to and liable under the Motor Carrier Act (MCA) for their operations in New Mexico prior to the enactment of the Transportation Network Company Services Act (TNCSA). Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the answer to this question should be "no." *See* Docs. 10 & 14. The Court agrees that the current complaint is insufficient under Federal Rule of Civil Procedure 8 to state a claim under the Motor Carrier Act and the New Mexico Unfair Practices Act. However, because Plaintiff originally filed the complaint in New Mexico state court, which has a more lenient pleading standard, the Court will dismiss the complaint without prejudice and grant Plaintiff leave to file an amended complaint by April 8, 2019.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On August 24, 2017, Plaintiff filed a single-count complaint in state court against Defendants for damages arising "under the New Mexico Motor Carrier Act and Unfair Practices Act." Doc. 1-1 (Compl.) at 1. Plaintiff is a New Mexico corporation with its primary place of business in Bernalillo County, New Mexico.[1] Compl. ¶ 1. Plaintiff is an authorized transportation service[2] carrier under the Motor Carrier Act and holds at least one Certificate[3] issued by the Public Regulation Commission (PRC) to provide services as a motor carrier. *Id.* Defendants Uber Technologies, Inc. and Hinter-NM, LLC (collectively, Uber) removed the case to federal court on diversity jurisdiction grounds on October 5, 2017. Doc. 1. Defendant Lyft, Inc. (Lyft) filed a notice of consent to removal on that same date. Doc. 4.

Plaintiff alleges that Defendants began providing "transportation services to the public in Bernalillo County, New Mexico" in or before April 2014. Compl. ¶ 15. Defendants "provided a tool for requesting vehicles-for-hire to users who download their free 'smart phone application' ('the App'). Users who open the App on their mobile phone are shown a map of their location or designated pick-up point and the available vehicles in that vicinity." Compl. ¶ 12. Plaintiff alleges that Defendants were "transportation service carriers" that provided "transportation services to the public for hire," and, in return, Defendants received renumeration or

---

[1] The following allegations are taken from Plaintiff's complaint. The Court accepts these allegations as true and recites them in a light most favorable to Plaintiff.

[2] A "transportation service" is defined in the Motor Carrier Act as "transportation subject to the jurisdiction of the commission, offered or provided by a motor carrier, that requires the carrier to obtain an operating authority from the commission under the Motor Carrier Act . . . ." NMSA 1978, § 65-2A-3(LLL).

[3] A "certificate" is defined in the Motor Carrier Act as "the authority issued by the commission to a person that authorizes the person to offer and provide a certificated service as a motor carrier . . . ." NMSA 1978, § 65-2A-3(G).

compensation, either directly or indirectly from the provision of transportation services. Compl. ¶¶ 11, 13, 14.

Plaintiff alleges that, although Defendants were "motor carriers"[4] as defined in the Motor Carrier Act, they did not obtain Certificates to operate under the Motor Carrier Act. Compl. ¶¶ 16, 17. Accordingly, on May 23, 2014, the PRC issued an Order to Show Cause and Cease and Desist Order against Defendants, directing them to cease operations in New Mexico "unless and until they obtained a Certificate under the Motor Carrier Act." Compl. ¶ 24.

Approximately a week later, on May 29, 2014, Uber applied to the PRC for a Temporary Authority under the Motor Carrier Act to operate a Specialized Passenger Service.[5] Compl. ¶ 18. At the same time, Uber filed a petition with the PRC "seeking waivers from certain operating requirements under the Motor Carrier Act which apply to taxi services." Compl. ¶ 19. On June 23, 2014, Lyft filed a motion to intervene in the Uber proceeding before the PRC. Compl. ¶ 20. Plaintiff asserts that Defendants' PRC filings "constitute admissions that [they] are operating a transportation service in New Mexico subject to the jurisdiction of the Motor Carrier Act." Compl. ¶ 21.

On June 25, 2014, the PRC denied Uber's application for Temporary Authority to operate as a Specialized Passenger Service. Compl. ¶ 22. According to Plaintiff, the PRC issued the denial based in part on its finding that "the proposed service does not meet minimum operating

---

[4] A "motor carrier" is defined in the Motor Carrier Act as a "person offering or providing transportation of persons, property or household goods for hire by motor vehicle, whether in intrastate or interstate commerce . . . ." NMSA 1978, § 65-2A-3(FF).

[5] A "specialized passenger service" is defined in the Motor Carrier Act as the "intrastate transportation for hire of passengers with special physical needs by specialized types of vehicles, or for specialized types of service to the public or community, as the commission may by rule provide . . . ." NMSA 1978, § 65-2A-3(CCC).

standards for transportation service carriers under New Mexico law." Compl. ¶ 22. Despite this denial, Plaintiff alleges, Defendants "knowingly and intentionally and unlawfully continued to operate in New Mexico" in violation of the Cease and Desist Order issued by the PRC. Compl. ¶ 23.

Effective May 18, 2016, New Mexico enacted the TNCSA, which Plaintiff acknowledges "provided a framework to legalize the Defendants' actions". Compl. ¶ 26. On August 15, 2016, the PRC enacted regulations pursuant to the TNCSA "that allowed Defendants to apply for certificates to operate legally in New Mexico." Compl. ¶ 28. Lyft did not apply for a certificate under the TNCSA and ceased operations in New Mexico. Compl. ¶¶ 30-31. Uber applied for and was granted certificates to operate under the TNCSA. Compl. ¶ 29. Uber has thus continuously operated in New Mexico since April 2014. Compl. ¶ 32.

Plaintiff alleges that from April 2014 until TNCSA certificates were granted, "Defendants operated in violation of the Motor Carrier Act."[6] Compl. ¶ 33. Plaintiff asserts that it lost revenue due to Defendants' "unfair and illegal activities" and that Defendants' "unfair practices" ultimately led it to cease operations. Compl. ¶¶ 34-35. Plaintiff claims to have been damaged as a result of Defendants' "unauthorized service" because Plaintiff incurred reductions in revenues as potential passengers opted to use Defendants' services instead of Plaintiff's. Compl. ¶¶ 39-40. Plaintiff further alleges that Defendants have not collected gross receipts taxes from passengers in violation of applicable law and that Defendants willfully violated the PRC's cease and desist order. Compl. ¶¶ 45. The complaint brings a single cause of action for "damages under the Motor Carrier Act and Unfair Practices Act." Compl. at 5-7.

---

[6] Since Lyft did not apply for a certificate under the TNCSA, this allegation seemingly would not apply to all Defendants, as Plaintiff asserts. The complaint does not otherwise indicate when Lyft's alleged violation of the Motor Carrier Act ended.

4

## II.     APPLICABLE LEGAL STANDARDS

Although New Mexico law governs the substantive analysis of Plaintiff's claims, the Court applies federal procedural law in analyzing the legal sufficiency of Plaintiff's complaint. *See Brigance v. Vail Summit Resorts*, *Inc.*, 883 F.3d 1243, 1249 (10th Cir. 2018); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1099 (10th Cir. 2017) (applying federal law to procedural questions in a diversity case and applying the substantive law of the forum state to analyze the underlying claims). In this case, Defendants seek dismissal of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. 10 at 4, Doc. 14 at 6.

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court considering a challenge under Rule 12(b)(6) may proceed according to a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* For purposes of this second prong, the Court "accept[s] the well-pled factual allegations in the complaint as true, resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s] whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (internal citations and quotation marks omitted). "A claim is facially plausible when the

5

allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

> There are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice.

*Id.* (citations and internal quotation marks omitted). "If a district court intends to rely on other evidence, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties." *Id.* (citing Fed. R. Civ. P. 12(d)); *see also Brokers' Choice of Am.*, 861 F.3d at 1103 ("When a party presents matters outside of the pleadings for consideration, as a general rule the court must either exclude the material or treat the motion as one for summary judgment.") (internal quotation marks and citations omitted). Under Federal Rule of Civil Procedure 12,

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). A court has broad discretion under Rule 12(d) to refuse to accept the extra-pleading materials and resolve the motion solely on the basis of the pleading itself. *See Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998). Reversible error may occur if a court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment. *Id.*

Here, the parties have presented numerous documents for the Court's consideration in ruling on Defendants' respective 12(b)(6) motions to dismiss. Specifically, Defendant Lyft has

6

attached several exhibits in support of its motion and reply brief. *See* Docs. 14-1 to 14-15. Similarly, while Defendant Uber did not initially attach documents to its initial motion, it did file two exhibits in support of its reply brief. *See* Docs. 30-1 and 30-2. And although no documents were attached as exhibits to Plaintiff's complaint, Plaintiff has also included a number of exhibits with its response brief. *See* Doc. 27-1.

The Court will not convert Defendants' motions to dismiss into motions for summary judgment. To do otherwise would require the Court to give notice to the parties and allow each party an opportunity to present any additional extra-pleading evidence – an inefficient process that would be better left for a motion for summary judgment filed in the normal course of the discovery process. The Court will therefore consider only those exhibits that fit within the limited exceptions set forth in *Gee* – *i.e.*, exhibits that are properly the subject of judicial notice or that are referred to in Plaintiffs' complaint and central to its claims. To the extent any such exhibits are considered, the Court will explain its reasons for doing so in its analysis.

## III. ANALYSIS

Uber and Lyft move to dismiss on the primary ground that neither company is a "transportation service carrier" as defined under New Mexico law. Uber and Lyft further argue that the New Mexico Unfair Practices Act (UPA), a consumer protection law, does not provide a cause of action to business competitors like Plaintiff. Finally, they argue that Plaintiff's complaint fails to set forth a sufficient factual basis for its allegations of causation under the UPA. Based on the allegations contained in Plaintiff's current complaint, the Court agrees with Defendants' first argument and, therefore, grants without prejudice Defendants' motions to dismiss. Further, the Court allows Plaintiff to amend its complaint and declines to issue an

opinion regarding Defendants' remaining arguments, which Defendants may renew if Plaintiff does file an amended complaint.

> A. <u>Plaintiff Does Not Sufficiently Allege That Defendants Are Transportation Service Carriers As Defined In The MCA.</u>

The motions to dismiss assert that Defendants' only involvement in the New Mexico transportation services industry consisted of "develop[ing] a mobile-phone application that allows users easily to request transportation from third-party transportation providers." Doc. 10 at 1; *see also* Doc. 14 at 1 ("Defendants operate peer-to-peer ridesharing platforms that allow drivers using their own vehicles to connect with individuals looking for rides in their area."). Under this reasoning, Defendants assert, it follows that Uber and Lyft are not themselves "transportation service carriers"; they merely provide software platforms "to connect drivers operating their own vehicles with individuals looking for rides." Doc. 14 at 9. In response, Plaintiff argues that "a company including Lyft and Uber, that hires employees (or even independent contractors) to drive people from place to place in exchange for money is a Motor Carrier and is providing 'transportation services.'" Doc. 27 at 7. Plaintiff further argues that whether Defendants "offer or provide the transportation of persons by motor vehicle or carry passengers" is a question of fact, not law. *Id.*

To the extent Plaintiff argues that Defendants are "transportation service carriers" based on the mere act of providing a tool to connect drivers with users, the Court disagrees. Plaintiff's complaint alleges:

> Defendants Uber, Hinter and Lyft provided a tool for requesting vehicles-for-hire to users who download their free "smart phone application" ("the App"). Users who open the App on their mobile phones are shown a map of their location or designated pick-up point and the available vehicles in that vicinity.

Compl. ¶ 12. The plain language of the Motor Carrier Act demonstrates that companies who provide this type of connection service, and do no more, are not "transportation service carriers." When interpreting a statute under New Mexico law, "[r]ules of statutory construction are provided by both the Legislature in the Uniform Statute and Rule Construction Act and by New Mexico case law." *See State v. Tufts*, 2016-NMSC-020, ¶ 3 (citing NMSA 1978, §§ 12-2A-1 to -20 (1997)). The Court's principal goal is "to determine and give effect to the Legislature's intent." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 206 P.3d 135, 139. In doing so, the Court "look[s] first to the plain meaning of the statute." *Moongate Water Co., Inc. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405, 407. The Court is to "give words their ordinary meaning, and if the statute is clear and unambiguous," the Court will "refrain from further statutory interpretation." *Id.* (internal quotation marks omitted).

The starting point for determining whether a company is a "transportation service carrier" is to look at the definition of "transportation service," which is defined as "transportation . . . offered or provided by a motor carrier." NMSA 1978, § 65-2A-3(LLL). In turn, "motor carrier" and "carrier" are defined as "a person offering or providing transportation of persons . . . for hire by motor vehicle." *Id.* § 65-2A-3(FF). These passages unambiguously do not apply to software developers.[7] If Defendants are correct that their only involvement in the transportation market in New Mexico was to develop and make available software for smart phones, they are also correct that they do not offer or provide transportation of persons for hire by motor vehicle.

---

[7] Because the Court finds the MCA unambiguous as applied to the allegations in the operative complaint, the Court need not reach the parties' arguments regarding the legislature's intent in subsequently enacting the TNSCA. *Cf. Estate of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶ 5, 373 P.3d 977 (only when "the Legislature's intent is not clear from the plain language of a statute" should a court "consider the statute's history and background").

Plaintiff resists this conclusion, dropping a footnote in its brief to assert that "Uber and Lyft provide transportation services by contracting with (and under New Mexico law, employing) drivers who receive dispatches from Uber and Lyft to pick up passengers"; and that "Lyft and Uber provide marketing, training, screening, auto standards, credit card processing services and pay some (not all) gross receipts taxes for their drivers." Doc. 26 at 8 n.3. The Court does not reach the question of whether factual allegations such as these contained in Plaintiff's brief would be sufficient to state a claim against Defendants, as Plaintiff does not present these same factual allegations in its complaint. *See Gee*, 627 F.3d at 1186.

In addition to alleging that Defendants provide a tool to connect drivers with users, Plaintiff alleges that "Defendants provided transportation services to the public for hire." Compl. ¶ 13. Plaintiff does not, however, specifically describe what Defendants do to provide transportation services. If this conclusory statement is based on the tool Defendants provide to connect drivers with users, this allegation is insufficient to state a claim, as set forth above. If this conclusory statement is based on some other actions Defendants have taken, Plaintiff must describe those actions in the complaint. It is not enough for Plaintiff to simply state in conclusory fashion that Defendants are transportation service carriers as that term is used in the MCA. *See Iqbal*, 556 U.S. at 679 ("a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"). Thus, the Court agrees with Defendants that Plaintiff's complaint fails to allege facts sufficient to state a claim.

  B.  <u>Defendants Are Not Collaterally Estopped From Arguing That They Are Not Subject To The MCA.</u>

Plaintiff argues that Defendants participated in proceedings before a state regulatory body and so are now estopped from arguing that the MCA does not govern their activities. Doc. 27 at

8-9. As discussed above, Plaintiff relies on extrinsic materials in making its arguments. Because the parties do not dispute that these are publicly filed records, the Court will take judicial notice of the regulatory orders attached to the parties' submissions. *See Hodgson v. Farmington City*, 675 F. App'x 838, 840-41 (10th Cir. 2017) (it is proper to "tak[e] judicial notice of public records from the parties' administrative and judicial proceedings" where the documents have a "direct relation" to the present case).

> In New Mexico,[8] to invoke collateral estoppel,
>
> > the moving party must demonstrate that (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 10, 850 P.2d 996, 1000. "If the movant introduces sufficient evidence to meet all elements of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation." *Id.* "This issue is within the competence of the trial court, and [the court of appeals] review[s] the trial court's determination for an abuse of discretion." *Id.*[9]

The Court declines to enforce collateral estoppel against Defendants based on the PRC's Final Order Amending The Commission's Motor Transportation Rules Pertaining To Transportation Network Companies, attached to Plaintiff's Response as Exhibit E. As

---

[8] As Defendants correctly point out, this issue is governed by state law in a diversity-jurisdiction case. *Reed v. McKune*, 298 F.3d 946, 949 (10th Cir. 2002).

[9] By contrast, the doctrine of res judicata, which is also invoked by Plaintiff, "bars religitation of the same *claim*." *Alba v. Hayden*, 2010-NMCA-037, ¶ 6, 237 P.3d 767, 769 (internal quotation marks omitted and emphasis added). As Defendants point out, res judicata is inapplicable here because Plaintiff's UPA claim was not litigated before the PRC.

Defendants point out, this Final Order is a rulemaking action, not an adjudicative determination. *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d 1278, 1285 (D.N.M. 2011) ("for preclusion to apply to an administrative decision the administrative body must be acting in a judicial capacity and resolve disputed questions of fact properly before it"). The Final Order itself makes clear that the PRC made its decision based on a regulatory notice-and-comment procedure, not an adversarial process. Doc. 27-1 at 24-25 (describing written comments filed by Lyft, among others, and a public comment hearing at which no one spoke). There is no indication in the Final Order that the parties engaged in any discovery or were permitted to participate in an evidentiary hearing. These type of "procedural differences between the agency and court actions" constitute sufficient basis to deny the application of collateral estoppel. *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 20, 850 P.2d 996, 1004.

Without addressing the formal requirements of collateral estoppel, Plaintiff makes arguments based on numerous other PRC filings attached to its Response. Doc. 27 at 5-6. Plaintiff argues that the Court should take "judicial notice" of the PRC's determinations in these filings. *Id.* at 5. While the Court may take judicial notice of their existence, it does not follow that the Court defers to the conclusions stated therein for the truth of the matter. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) ("The documents may only be considered to show their contents, not to prove the truth of matters asserted therein." (internal quotation marks and alteration omitted)). Plaintiff does not offer any other alternative doctrine upon which this Court should defer to the PRC's findings, and the Court declines to invent any.

C. Because The Court Is Granting Defendants' Motion To Dismiss, The Court Need Not Determine The Issue Of Standing.

Defendants argue that Plaintiff lacks standing to bring a claim under the New Mexico UPA because, rather than suing to redress consumer harm, Plaintiff only seeks to recover its own

lost business revenue. Docs. 10 at 10-11; Doc. 14 at 12-15. Defendants claim that numerous courts have found that a UPA plaintiff may not seek to redress competitive rather than consumer harm. Doc. 29 at 9 (citing, for example, *Fisher Sand & Gravel Co. v. FNF Constr., Inc.*, No. 10-CV-0635 RB/SMV, 2013 WL 12122650, at *2 (D.N.M. July 1, 2013)). Plaintiff counters that the MCA explicitly provides that "an authorized transportation service carrier[] may bring an action pursuant to the Unfair Practices Act," NMSA 1978, § 65-2A-33, and thus clearly grants standing to Plaintiff, who is an authorized transportation service carrier. *See* Compl. ¶ 1 (noting the MCA).

After the parties submitted their briefs on this issue, the New Mexico Court of Appeals issued a decision holding that business competitors may bring UPA claims, "provided that the conduct alleged involves trade practices that either implicate consumer protection concerns or are addressed to the market generally." *GandyDancer, LLC v. Rock House CGM, LLC*, 2018-NMCA-064, ¶ 12, 429 P.3d 338, 343; *see* Doc. 34 (Plaintiff's notice of supplemental authority). Plaintiff's complaint does not demonstrate that the complained-of conduct "either implicate[s] consumer protection concerns or [is] addressed to the market generally." *See* Docs. 35 & 36 (Defendants' responses to notice of supplemental authority). Rather, the complaint alleges only that "Defendants offered and provided transportation services" in violation of the law, "'for hire' and upon the request of a consumer." Compl. ¶¶ 41-42. Thus, Plaintiff's complaint fails to allege facts the New Mexico Court of Appeals in *GandyDancer* found necessary to a successful UPA claim brought by a business competitor. Of course, given that the case is currently pending before the New Mexico Supreme Court, whether a business competitor can bring a UPA and, if

13

so, what the business competitor must show to sustain such a claim, may change.[10] *See GandyDancer, LLC v. Rock House CGM, LLC*, No. S-1-SC-37201.

As noted, the New Mexico Court of Appeals issued its decision after the parties submitted their briefs. Further, the parties' supplemental notices were necessarily limited in scope. If Plaintiff files an amended complaint, the Court would benefit from more comprehensive briefing on this issue. At this point, the Court need not decide this issue and declines to do so.

> D. <u>Because Plaintiff Fails To Allege Facts Sufficient To Establish That Defendants Are Transportation Service Carriers, The Court Need Not Determine Whether Plaintiff Has Sufficiently Plead Causation And Damages.</u>

Finally, Defendants move to dismiss the complaint because Plaintiff fails to plead facts plausibly establishing that Defendants' conduct caused Plaintiff's damages. Doc. 10 at 11-12; Doc. 14 at 15-16. Although Plaintiff is not required to "set forth a prima facie case for each element" of its claim, it must still state sufficient facts to establish a "nexus" or a "link" between the challenged conduct and damages, other than "sheer speculation." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192, 1194 (10th Cir. 2012). Plaintiff sets forth allegations related to damages as follows:

> 34. Plaintiff has lost revenue due to Defendants' unfair and illegal activities.
>
> 35. As a result of the unfair practices of Defendants, Plaintiff ceased business operations.
>
> . . .

---

[10] While the Court need not defer to the New Mexico Court of Appeals' decision in *GandyDancer* and evaluates it only for its persuasive value, the Court's interpretation of New Mexico law must give way to the New Mexico Supreme Court's decision. *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996).

> 39. Plaintiff is a persons [sic] who has been damaged as a result of Defendants' unauthorized service.
>
> 40. Plaintiffs have incurred reductions in revenues as potential passengers have used Defendants' unlawful services instead of Plaintiffs.

Doc. 1-1 at 5-6.

These allegations do not explain how Defendants' alleged regulatory violations caused Plaintiff's lost revenue or caused Plaintiff to cease business operations. This leaves Plaintiff with the theory that an unlawfully operating company which takes business from a lawfully operating company necessarily damages the lawfully operating company in violation of the UPA. Of course, the success of this theory depends on a determination that Plaintiff alleged facts sufficient to state a claim that Defendants operated unlawfully in the first place. This "unlawfulness" question then ties into the question of whether Defendants were transportation service providers subject to regulation under the MCA. The Court need not presently decide these issues. Because the Court is dismissing Plaintiff's complaint for other reasons and granting Plaintiff leave to amend, the Court declines to decide if the current allegations regarding causation pass muster under *Iqbal*.

  E. <u>Plaintiff Shall Have Leave To Amend Its Complaint.</u>

Throughout its response, Plaintiff repeatedly asserts that it has additional factual material with which it can supplement the allegations in this case. Doc. 27 at 8 n.3 & 16-17. Plaintiff argues:

> A complaint filed in New Mexico state court is subject to a relaxed pleading standard. When the case is removed to federal court, the complaint is subject to the more rigorous Twombly standard. Although a complaint crafted to meet the state's notice pleading standard may survive a motion to dismiss in that forum, upon removal it might fail to state a claim under the more rigorous federal standard.

Doc. 27 at 3 n.2. The Court agrees.

Echoing the language of the Federal Rules, New Mexico's Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." NMRA, Rule 1-008(A)(2). New Mexico, however, has declined to follow the United States Supreme Court's interpretation of Federal Rule 8, as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Instead, New Mexico has criticized it: "The plausibility standard created by the two U.S. Supreme Court cases adds a determination of likelihood of success on the merits so that a trial judge can dismiss a claim, even where the law does provide a remedy, if that judge does not believe it is plausible the claim will succeed." *Madrid v. Vill. of Chama*, 2012-NMCA-071, ¶ 17, 283 P.3d 871, 876. Thus, a party filing in New Mexico state district court should not expect to have to comply with the federal standard.

Federal Rule of Civil Procedure 15 permits a plaintiff to amend a complaint as of right only within 21 days after serving it or 21 days after service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). But "[t]he court should freely give leave when justice so requires." *Id.* The Court agrees that, due to the difference between the standards articulated by New Mexico and the U.S. Supreme Court, a plaintiff whose suit is removed from state court to federal court should generally be permitted to amend the complaint if it is determined not to comply with *Twombly* and *Iqbal*.

## IV. CONCLUSION

For the forgoing reasons, Defendants Uber Technologies, Inc. and Hinter-NM, LLC's Motion to Dismiss (Doc. 10) and Lyft, Inc.'s Motion to Dismiss (Doc. 14) are **GRANTED**.

Plaintiff's complaint (Doc. 1-1) is dismissed without prejudice. Plaintiff shall have until April 8, 2019 to file an amended complaint.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent